UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOSEPH PAUL O'BRYAN            MOVANT/DEFENDANT

v.            CRIM. ACTION NO. 3:13-CR-147-CRS
           CIV. ACTION NO. 3:16-cv-00584-CRS

UNITED STATES OF AMERICA            RESPONDENT/PLAINTIFF

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

**FINDINGS OF FACT**

Joseph O'Bryan is a federal prisoner. On February 21, 2014, O'Bryan entered a plea of guilty pursuant to a Rule 11(c)(1)(B) plea agreement[1] to count 1 of an indictment that charged him with the knowing and intentional possession of 100 kg or more of marijuana with intent to distribute it in violation of 21 USC 841(a)(1) and 841(b)(1)(B).[2]

As part of his plea agreement, O'Bryan knowingly and voluntarily waived his right to direct appeal of his conviction and resulting sentence. O'Bryan in the same section of the agreement expressly waived his right to collaterally attack his conviction and the resulting sentence pursuant to 28 U.S.C. § 2255 except for claims of ineffective assistance of counsel or prosecutorial misconduct.[3] Following a change of plea hearing held February 21, 2014, the District Court found that O'Bryan had voluntary and knowingly entered his plea of guilty and

---

[1] (DN 27, Plea Agreement).
[2] (DN 12, Indictment).
[3] (Id. at p. 6, ¶ 13).

1

that a factual basis existed for his plea.[4] On May 16, 2014, the District Court sentenced O'Bryan to 60 months of imprisonment, the mandatory minimum and the low end of the advisory guidelines range applicable.[5] O'Bryan did not take a direct appeal from his conviction. Instead on June 30, 2016 he filed his current motion for post-conviction relief styled "Motion For Abeyance Pursuant to Supreme Court Ruling in Johnson v. United States."[6] The motion in its entirety states:

> The Petitioner pled guilty on May 16, 2014, to one count of possession with intent to distribute marijuana under 21 U.S.C. 841(a)(1). The petitioner was under a previous probation/supervised release sentence when he was charged with the instant offense. The prior offense used to enhance [his] sentence stem[s] from a conviction in November, 1995; Count One, (possession with intent to distribute cocaine)(possession with intent to distribute marijuana) and (carrying a firearm during the commission of a drug crime). Case No. 3:95-CR-5-1 (1995).
> Petitioner having limited resources is working on his potential claim under Johnson v United States, 135 S. Ct. 2551 (2015). The Johnson decision was made retroactive[ly] applicable on collateral review. Petitioner submits he has never filed an initial section 2255 on this case.
> Wherefore, petitioner respectfully requests this Honorable Court grant his request to extend the June 26, 2016 deadline date so he can make a proper filing under Section 2255.

(DN 41 Motion). O'Bryan did not file any additional or amended motions seeking 2255 relief, nor any memoranda or other papers in support of his briefly-worded motion, which was signed by O'Bryan on June 20, 2016 and mailed on June 28, 2016, or two days after the one-year time period for filing *Johnson*-based challenges expired on June 26, 2016.

The United States has filed a motion to dismiss O'Bryan's petition to vacate, set aside or correct his sentence.[7] In its motion, the government argues first that O'Bryan waived his right to collaterally attack his sentence by the terms of paragraph 13 his plea agreement, which he does

---

[4] (DN 26, Order on Change of Plea.).
[5] (DN 35, Judgment).
[6] (DN 41, Motion for abeyance).
[7] (DN 50, Motion to Dismiss).

2

not challenge.[8] Second, the government argues that, irrespective of his plea agreement waiver, O'Bryan's claims additionally are untimely to the extent that he attempts to seize on *Johnson v. United States*, 135 S.Ct. 2551 (2015) in order to rely on the time limitation set forth in § 2255(f)(3) for the simple reason that O'Bryan's sentence was never enhanced under either USSG § 4B1.1 or 18 U.S.C. §924(e)(1). His sentence instead was the result of the applicable statutory mandatory minimum under 21 U.S.C.§ 841(b)(1)(B) and USSG § 5G1.1(b), neither of which was in any fashion affected by *Johnson*.

Upon consideration, the Court agrees that the federal courts are now precluded from considering the merits of O'Bryan's motion to vacate given his explicit waiver of his right to collaterally attack his conviction and sentence by the terms of paragraph 13 of his plea agreement. Recent case authority of the Sixth Circuit announced in *United States v. Morrison*, 2017 WL 360553 at *3 (6th Cir. Jan. 25, 2017) compels the dismissal of the petition. Because reasonable jurists could not disagree that O'Bryan has failed to make a substantial showing of the denial of a constitutional right, the Court shall further recommend that he be denied a certificate of appealability under 28 USC 2253(c)(1).

## CONCLUSIONS OF LAW

### I.

### Standard for Post-conviction Relief

A motion to vacate brought by a federal prisoner pursuant to 28 U.S.C. §2255 must set forth one or more of three possible grounds for relief. *See United States v. Doyle*, 631 F.3d 815, 817-18 (6th Cir. 2011); *Calloway v United States*, 3:13CV-75-CRS/3:07CR-25-CRS, 2016 WL

---

[8] (Id at pp. 2-4).

3094028 at *4 (W.D. Ky. June 1, 2016)(same). The motion may allege an error of constitutional magnitude, allege that the defendant's sentence fell outside the statutory limits, or maintain that a fundamental error of fact or law occurred that rendered the entire criminal proceedings invalid. *Id.*(citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). *See also, United States v. Addonizio*, 442 U.S. 178, 185-86 (1979).

## II.

## PLEA AGREEMENT WAIVER

The United States in its Motion to Dismiss, as noted above, argues that the federal courts should not address the merits of O'Bryan's motion. According to the government, O'Bryan knowingly and voluntarily waived his right to appeal and to bring the present collateral attack when he entered into the plea agreement that led to his guilty plea. The government reasons that, having accepted the substantial benefits of the plea agreement, O'Bryan cannot now avoid the consequences of his own binding promises, which include the aforementioned waivers. Accordingly, the United States concludes that it should not be put to the unnecessary burden of further addressing the substance of his *Johnson*-based sentencing claim. *See United States v. Cocker,* 514 F.3d 562, 574 (6th Cir. 2008); *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996). We agree.

A criminal defendant may waive any right, statutory or constitutional, in a plea agreement as long as the waiver is both voluntary and knowing. *Coker*, 514 F.3d at 573 ("A defendant may waive any right, including a constitutional right, in a plea agreement so long as the waiver is knowing and voluntary.") (citing *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004)). *See gen., United States v. Mezzanatto*, 513 U.S. 196, 201 (1995) ("A criminal defendant may knowingly and voluntarily waiver many of the most fundamental protections

4

afforded by the Constitution."); *Peretz v. United States*, 501 U.S. 923, 936 (1991) ("The most basic rights of criminal defendants are ... subject to waiver.").

Over twenty years ago in *Palmero v. United States*, 101 F.3d 702 (6th Cir. 1996) (available on Westlaw at 1996 WL 678222), the Sixth Circuit confirmed for the first time that a defendant may validly waive the right to seek post-conviction § 2255 relief in a plea agreement so long as such waiver is knowing and voluntary. Three years later in *Watson v. United States*, 165 F.3d 486, 488-89 (6th Cir. 1999) the Sixth Circuit re-affirmed its earlier view on such waivers in a published decision. *Id*. ("[W]e hold that a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief."). More recently, in *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001), the Sixth Circuit explained that, "[w]hen a defendant knowingly, intelligently and voluntarily waives the right to collaterally attack a sentence, he or she is precluded from bringing a claim of ineffective assistance of counsel based on 28 U.S.C. §2255." *Id*. Accordingly, if an examination of the totality of the circumstances surrounding the present waiver reveals that O'Bryan fully understood the nature of the rights being surrendered and how such a waiver would generally apply, then his waiver will be held to be knowing and voluntary *Johnson* notwithstanding. *See United States v. Ruiz*, 536 U.S. 622, 629 (2002); *Berry v. Mintzes*, 726 F.2d 1142, 1149 (6th Cir.) cert denied, 467 U.S. 1245 (1984).

The Sixth Circuit recently in *Morrison,* 2017 WL 360553 at *3 emphasized this point yet again in the face of a post-conviction challenge based on *Johnson*. *Morrison* involved a federal defendant who pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). *Id*. As part of his plea agreement, the defendant waived his right to appeal "any sentence imposed by the Court…so long as it is within the applicable guideline range, or lower,

5

whatever that guideline range might be." *Id*. The district court at sentencing relied on the defendant's prior Tennessee conviction for aggravated burglary to qualify as a "crime of violence" under the Sentencing Guidelines, which then included the burglary of a dwelling in the definition of "crime of violence" under USSG §§ 2K 2.1 and 4B1.2(a)(2015).

Existing Sixth Circuit case law at the time of the sentencing held the Tennessee aggravated burglary statute to be divisible since it criminalized more conduct than a "generic" burglary statute. *United States v. Ozier*, 796 F.3d 597, 600-03 (6th Cir. 2015), *abrogated by, Mathis v. United States*, 136 S.Ct. 2243 (2016). The District Court in *Morrison* in reliance on the *Ozier* decision, along with the then-existing language of the Sentencing Guidelines, determined that the applicable enhanced guideline range was 77 to 96 months of imprisonment, after it examined the defendant's plea colloquy from his earlier Tennessee burglary conviction, which confirmed the burglary of a dwelling thereby qualifying the defendant for the career offender status that justified imposition of the enhanced sentence.

Defendant Morrison, who had challenged such status throughout the proceedings, filed an appeal despite the terms of his plea agreement. *Id*. While his appeal was pending, the US Supreme Court rendered the *Mathis* decision clarifying the requirements for a statute to be held to be divisible thereby abrogating *Ozier*. *Mathis v. United States*, ___ U.S. ___, 136 S.Ct. 2243, 195 L.Ed. 2d 604 (2016). Additionally, the Sixth Circuit in another case, *United States vs. Stitt*, 646 F. App'x 454 (6th Cir. 2016) granted rehearing in banc during this same time to re-examine whether Tennessee's aggravated-burglary statute criminalizes more conduct than generic burglary under the Armed Career Criminal Act, and if so, whether it is divisible after *Mathis*. Given these developments, *Mathis* and *Stitt*, Defendant Morrison attempted to argue on appeal that his underlying Tennessee aggravated burglary conviction no longer qualified as a "crime of

violence" under the Guidelines so that his 96-month sentence was rendered invalid by legal developments that occurred following entry of his guilty plea.

The Sixth Circuit panel unequivocally rejected Morrison's efforts in this regard based on the appeal waiver language in his plea agreement. Writing for a unanimous court, Judge Cook explained that:

> We will enforce an appeal waiver included in a plea agreement when the agreement is made knowingly and voluntarily. *United States v. Toth*, 668 F.3d 374, 378 (6th Cir. 2012) (citing *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001)). Morrison may challenge his waiver of appeal rights only "on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel." *United States v. Detloff,* 794 F.3d 588, 592 (6th Cir. 2015) (quoting *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009)).
>
> Here, Morrison makes no effort to undermine the voluntariness of his plea agreement, nor does he assert a violation of Federal Rule of Criminal Procedure 11. Our independent review of Morrison's plea hearing confirms that he voluntarily waived his appellate rights. The district court informed Morrison that he was giving up his right to appeal any sentence within the guideline range, and explained the few narrow exceptions to that waiver (ineffective-assistance-of-counsel or prosecutorial-misconduct claims). When asked if he understood, Morrison said "Yes, sir."
>
> Morrison instead relies on the change wrought by *Mathis* to maintain that he could not knowingly waive his right to appeal. It is well settled, however, that a change in law cannot render a plea agreement unknowing. *See Brady v. United States*, 397 U.S. 742, 757 (1970); *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005) ("[W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature."). This rule reflects the sound judgment that a plea agreement, like any other contract, allocates risk. *Bradley*, 400 F.3d at 464. By waiving the right to appeal, a defendant assumes the risk that a shift in the legal landscape may engender buyer's remorse. *Id.*; *see also United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) ("The possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.").
>
> Accordingly, courts will enforce appeal waivers even when a legal development makes it likely that the defendant would receive a lower sentence were the defendant resentenced under the new law, and even when the legal change affects constitutional rights. For example, when the Sentencing Commission lowered the

> base offense levels for many drug offenses in 2008 and 2014, defendants who waived their right to appeal could not benefit from the change. *See, e.g., United States v. Ellison,* No. 16-5085, 2016 WL 6818855, at *2 (6th Cir. Nov. 18, 2016) (per curiam); *United States v. Marquez*, 570 F. App'x 816, 818–19 (10th Cir. 2014) (per curiam); *United States v. Polly*, 630 F.3d 991, 1002 (10th Cir. 2011). Similarly, after the Supreme Court voided for vagueness the "residual clause" in the ACCA's definition of "violent felony," *see Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), courts routinely enforced the appeal waivers of prisoners who stood to benefit. *See, e.g., Sanford v. United States*, 841 F.3d 578, 579–80 (2d Cir. 2016) (per curiam); *In re Garner*, No. 16-1655, 2016 WL 6471761, at *2 (6th Cir. Nov. 2, 2016); *United States v. Hurtado*, No. 16-2021, 2016 WL 3410270, at *1 (10th Cir. June 17, 2016) (per curiam); *United States v. Bey*, 825 F.3d 75, 83 (1st Cir. 2016); *United States v. Blackwell*, 651 F. App'x 8, 10 (2d Cir. 2016) (per curiam); *United States v. Ford*, 641 F. App'x 650, 651 (8th Cir. 2016) (per curiam). Although Morrison understandably regrets waiving his appellate rights in light of *Mathis* and *Stitt*, his "lack of clairvoyance cannot undo [that] decision." *In re Garner*, 2016 WL 6471761, at *2.

*Morrison,* 2017 WL 360553 at *2.

The Sixth Circuit then continued in *Morrison* to address the question of whether the *McBride* decision called into question the enforceability of the appeal waiver contained in Morrison's plea agreement. Once again, the panel unequivocally rejected *McBride* as authority for ignoring the preclusive effect of a plea agreement waiver of the right to appeal, explaining that:

> In an effort to circumvent his appeal waiver's preclusive effect, Morrison invokes *United States v. McBride*, 826 F.3d 293 (6th Cir. 2016). In *McBride*, the defendant's plea agreement included an "understanding" that he would be sentenced as a career offender because "he ha[d] at least two prior crime of violence convictions." *Id*. at 294 (alteration in original). McBride appealed his sentence following *Johnson*, arguing that his prior offense for bank robbery no longer qualified as a crime of violence. *Id*. at 295. Although we recognized that McBride's consent to his career-offender designation would normally waive his right to challenge it on appeal, we nonetheless reviewed for plain error, reasoning that "McBride could not have intentionally relinquished a claim based on Johnson[.]" *Id.*

> But the *McBride* plea agreement, unlike the one here, did not include an appeal waiver; McBride simply agreed that he qualified as a career offender. Looking past the waiver-inducing effect of such a concession makes sense in those circumstances—after all, McBride could not "have intentionally relinquished" a

> *Johnson*-based challenge to his career-offender designation "considering [*Johnson*] was decided after [he was] sentenced." *United States v. Stines*, 313 F.3d 912, 917 (6th Cir. 2002); *see also McBride*, 826 F.3d at 295. Morrison, on the other hand, could and did intentionally relinquish his right to appeal. In doing so, he assumed the risk that he would be denied the benefit of future legal developments. *See, e.g., In re Garner*, 2016 WL 6471761, at *2.

*Id*. at *3. *See Wall*, 2017 WL 193549 at *2(reversing its earlier reliance on *McBride* as being error where the defendant in *Wall* in his plea agreement waived his right to collaterally attack his sentence rather than making a mere Guidelines-specific waiver such as in *McBride*).

After *Morrison* there can be little dispute that plea agreement waivers of the right to appeal or to collateral attack will be enforced in the Sixth Circuit even when subsequent events or decisions of the U.S. Supreme Court, such as *Johnson* or *Mathis,* potentially enlarge the affected defendant's constitutional or statutory rights.  So long as the plea agreement and its waiver provisions were knowingly and voluntarily entered into by the defendant, and the entry of the guilty plea and acceptance of the agreement by the District Court was in accord with Rule 11 of the Federal Rules of Criminal Procedure, rather than the product of ineffective assistance of counsel, the waiver of the right to appeal or to collateral attack will be upheld absent a miscarriage of justice, *Johnson* notwithstanding. *Morrison,* 2017 WL 360553 at *2-3; *Wall*, 2017 WL 193549 at *2("This circuit's *Booker* cases teach that an error can "seriously affect the fairness, integrity, or public reputation of the judicial proceeding" without establishing a miscarriage of justice that is sufficient to set aside a collateral attack waiver.").

The reasons for this result become obvious when one considers the nature of plea agreements and the promises contained therein.  Both parties bargain for finality and, for the defendant, the possibility of a far more favorable outcome on sentencing than at trial.  Each party to the agreement enters into a binding contract with the expectation that the promises of the opposing party will be honored and enforced to the full extent that the law permits.  If

subsequent legal developments were routinely permitted to upend such agreements, they would lose their value to the detriment not only of the parties, but of the courts, as well. Given the essential reliance of all concerned upon plea agreements and their enforceability, any judicial policy or authority that undercuts the finality of such agreements, merely because the ever-changing law subsequently created the possibility of a different outcome absent an otherwise knowing and valid waiver, would be entirely self-defeating – – a proposition that not only *Morrison* has recognized, but numerous decisions from other federal Circuits as well.[9]

Examination of the motion filed by O'Bryan[10] reveals that he does not attempt to challenge the voluntariness of his plea agreement. He likewise does not assert a violation of Rule 11 of the Federal Rules of Criminal Procedure in the acceptance of his change of plea and plea agreement. O'Bryan does not claim that ineffective assistance of counsel rendered either the plea agreement or his plea of guilty constitutionally invalid. Finally, he does not argue that the enforcement of his waiver of collateral attack provision in paragraph 13 of the plea

---

[9] *See, e.g., United States v Bey*, 825 F.3d 75, 82-83 (1st Cir. 2016)(appeal waiver contained in plea agreement remained enforceable, despite the clear Guidelines violation after *Johnson*, where defendant freely and intelligently agreed to waive his right to appeal as reflected in both the agreement and the plea colloquy and denying the appeal would not work a miscarriage of justice); *Sanford v. United States*, 841 F.3d 578, 579-81 (2nd Cir. 2016)(assuming that defendant was sentenced under a Guidelines provision later determined to be unconstitutional after *Johnson*, defendant's plea agreement waiver of the right to appeal his conviction remained enforceable as "a defendant's inability to foresee [a change in the law] does not supply a basis for failing to enforce an appeal waiver."); *United States v. Agurs*, 629 Fed. Appx 288 (3rd Cir. Oct. 6, 2015)( Defendant's lack of awareness of case that he contended would provide "strong argument" he was not career offender under Sentencing Guidelines did not render his guilty plea not knowing and voluntary, and thus did not provide exception to appellate waiver in prosecution for conspiracy and drug possession.); *Morrison,* 2017 WL 360553 at *3("Courts will enforce appeal waivers even when a legal development makes it likely that the defendant would receive a lower sentence were the defendant resentenced under the new law, and even when the legal change affects constitutional rights.") *United States v. Worthen*, 842 F.3d 552, 554-55 (7th Cir. 2016)(appeal waivers in plea agreements are generally enforceable and preclude appellate review absent the imposition of a sentence that exceeds the statutory maximum for the crime committed so that, because defendant's possible invalid sentence enhancement as a "career offender" did not exceed the statutory maximum, his appeal waiver was valid and enforceable); *United States v. Ford*, 641 F3d App'x 650 (8th Cir. Mar. 29, 2016)(enforcing a plea agreement appeal waiver in the face of a career-offender *Johnson*-based challenge where defendant knowingly and voluntarily entered into the waiver and enforcing it would not result in a miscarriage of justice); *United States v. Frazier-LeFear*, No. 16-6128, 2016 WL 7240134 at * 2-3 (10th Cir. Dec. 15, 2016)(enforcing a prior plea agreement waiver to dismiss defendant's 2255 motion in the face of a clear *Johnson* violation under the residual clause of the career offenders guidelines in USSG § 4B1.2(a) where defendant's waiver was knowing and valid and enforcement did not result in a miscarriage of justice);

[10] (DN 41, Motion for Abeyance).

agreement[11] will result in a miscarriage of justice. Accordingly, his plea agreement waiver is fully binding and his motion to vacate must be dismissed with prejudice without consideration of its merits.

### III.

### Certificate of Appealability

The final question is whether O'Bryan is entitled to a certificate of appealability. A state or federal prisoner who seeks to take an appeal from the dismissal of a habeas corpus petition or a motion to vacate must satisfy the COA requirements of 28 U.S.C. § 2253(c). A COA will be issued only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Such a substantial showing is made when a prisoner establishes that jurists of reason would find it debatable whether the petition or motion states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling. *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court is required to make an individual assessment of the issues and to indicate which specific issue or issues satisfy the standard of § 2253(c). *See Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002). *See also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (discussing 28 U.S.C. § 2253(c)). A prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability. *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Here, reasonable jurists could not debate whether O'Bryan has stated valid claims. None of his arguments run to the validity of the plea agreement waiver of his right to bring the present collateral attack. Following *Morrison* little doubt remains about the position of the Sixth Circuit

---

[11] (DN 27, Plea Agreement, p. 6, ¶ 13).

11

on the enforceability of such waivers. Subsequent favorable developments in the law such as *Johnson* simply do not nullify an otherwise valid plea agreement waiver of the right to appeal or to bring a collateral attack. Because reasonable jurists could not conclude otherwise, O'Bryan should be denied a certificate of appealability as to all issues. He has failed to make a substantial showing of the denial of a constitutional right.

## RECOMMENDATION

The Magistrate Judge having made findings of fact and conclusions of law recommends that the motion to vacate, set aside or correct be denied with prejudice and that the movant be denied a certificate of appealability for the reasons set forth above.

## NOTICE

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived. *Thomas v. Arn,* 474 U.S. 140, 150-51 (1985); *United States v. Walters*, 638 F.3d 947, 949-50 (6th Cir. 1981); 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(2)

Copies to Defendant and Counsel of Record